UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:10-cr-00167-JAW-02 |
| | ) | |
| MICHAEL STONE | ) | |

**ORDER DENYING DEFENDANT'S MOTION
FOR BAIL PENDING APPEAL**

In this marijuana manufacturing case, the Defendant moves for bail pending appeal based on the contention that the Court erred when it calculated the number of marijuana plants for which he should be held legally responsible under the United States Sentencing Guidelines. After getting back into the weeds, the Court has determined that it correctly calculated the number of marijuana plants for which the Defendant is responsible and denies the motion.

I. **STATEMENT OF FACTS**

A. **General Background**

On April 29, 2011, Michael Stone pleaded guilty to manufacturing marijuana, a violation of 21 U.S.C. § 841(a)(1), *Minute Entry* (Docket # 60); on August 3, 2011, his co-defendant, neighbor, and brother Bradley Stone followed suit and pleaded guilty to the same crime, *Minute Entry* (Docket # 72). At his guilty plea, Michael Stone admitted the contents of a Prosecution Version of the Offense that read:

> On September 21, 2010, DEA and MDEA agents executed two federal search warrants at the homes of Michael Stone and his brother, Bradley, located at 1557 Lyford Road, Orn[e]ville, Maine. At Michael Stone's residence, agents recovered evidence of his involvement in the

manufacture of marijuana. In the basement of the residence, agents located three fully grown marijuana plants drying on a tarp that had been laid on the floor. In the kitchen, agents recovered a GPS device and a digital scale.

Agents met with Michael Stone and advised him of his Miranda rights. Stone agreed to speak with them and admitted that he grew marijuana and that he had just harvested three plants from "across the street" but would not elaborate on the precise location. He told the agents that he used marijuana on a daily basis. He told the agents that the firearms found in the home belonged to him.

A certified forensic chemist with the U.S. Drug Enforcement Administration would testify that a random sample of the suspected marijuana seized from the residence was tested and was, in fact, marijuana.

*Am. Prosecution Version of the Offense* at 1-2 (Docket # 59). Similarly, at his guilty

plea, Bradley Stone admitted the contents of a Prosecution Version of the Offense

that read:

On September 21, 2010, in the District of Maine, the defendant knowingly and intentionally manufactured marijuana plants, a Schedule I controlled substance, and did aid and abet that conduct. He grew marijuana plants on property behind his home in Orneville, Maine.

The marijuana was seized on September 21, 2010, when law enforcement agents executed two federal search warrants at the homes of Bradley Stone and his brother, Michael, located at 1557 Lyford Road, Orneville, Maine. The agents also searched a wooded area behind the two homes, where in excess of thirty marijuana plants were growing. The agents also found a large pile of potting soil not far from the defendant's home. In the defendant's home, various items of evidentiary value were found by the agents, including processed marijuana, pruning shears, camouflaged clothing, a rucksack containing a budded marijuana stem, scales, and other evidence.

The marijuana plants and the processed marijuana were submitted for laboratory testing. A certified chemist concluded that the substances were, in fact, marijuana.

Had this case proceeded to trial, the evidence would have included testimony of Special Agents and Officers from the U.S. Drug Enforcement Administration ("DEA") and the Maine Drug Enforcement Agency ("MDEA"), evidence seized from the defendant, and a certified laboratory chemist.

*Prosecution Version of the Offense* at 1-2 (Docket # 71) (emphasis omitted).

Although the brothers Stone admitted they manufactured marijuana and pleaded guilty to these crimes, they left open the question of drug quantity—more precisely, the number of marijuana plants for which they should be held responsible under the United States Sentencing Guidelines. The Court scheduled the two brothers for joint sentencing on December 29, 2011 and at the hearing, after determining the quantity of marijuana attributable to each defendant, sentenced Bradley Stone to twenty-three months incarceration, three years of supervised release, and a $100 special assessment, *J.* (Docket # 100), and Michael Stone to twelve months and one day incarceration, three years of supervised release, a fine of $1,000, and a $100 special assessment, *J.* (Docket # 101). Each Defendant appealed. *Notice of Appeal* (Docket # 98); *Notice of Appeal* (Docket # 99).

Contending that he should have been held responsible for only three marijuana plants, not thirty-one, on April 19, 2012, Michael Stone moved for bail pending appeal. *Mot. for Bail Pending Appeal* (Docket # 111) (*Def.'s Mot.*). On April 25, 2012, the Government responded, opposing release pending appeal. *Gov't's Obj. to Def.'s Mot. for Bail Pending Appeal* (Docket # 112) (*Gov't's Opp'n*).

### B.    The Probation Office's Calculations

In its Presentence Report (PSR), the Probation Office attributed thirteen plants to Michael Stone: six marijuana plants directly behind his house, four plants in an abandoned Ford Explorer, and three plants in his basement.  The Probation Office held Mr. Stone accountable for 1.4 kilograms of marijuana, recommended a base offense level of 10 pursuant to United States Sentencing Guideline (U.S.S.G.) § 2D1.1(15), a two-level firearms enhancement under U.S.S.G. § 2D1.1(b)(1), and a two-level decrease for acceptance under U.S.S.G. § 3E1.1 for an adjusted offense level of 10.[1]  This resulted in a recommended Guideline sentence range of 6 to 12 months, a fine of $2,000 to $20,000, a period of supervised release of 2 to 3 years, and a special assessment of $100.

### C.    The Court's Calculations

The Court found Michael Stone was responsible for 28 plants in addition to the 3 in his basement, a total of 31 plants.  Based on this finding, the Court calculated Michael Stone's base offense level at 12 pursuant to U.S.S.G. § 2D1.1(c)(14), imposed a two-level firearms enhancement under U.S.S.G. § 2D1.1(b)(1) for a total of 14, reduced his offense level by two for acceptance of responsibility under U.S.S.G. § 3E1.1, and arrived at an adjusted offense level of 12.  *Sentencing Tr.* 125:21-25 (*Tr.*).  With a Criminal History Category I and a total offense level of 12, Michael Stone was subject to a Guideline sentence of 10 to 16 months, a fine of $3,000 to $30,000, a period of supervised release of at least two

---

[1] Under the United States Sentencing Guidelines, each marijuana plant is considered to weigh 100 grams or the actual weight of the plant, whichever is greater.  U.S.S.G. § 2D1.1(c)(E).

and not more than five years, and a special assessment of $100. *Id.* 126:1-20. The Court's sentence of twelve months and one day was within the newly-calculated advisory Guideline sentence range.

## II. THE PARTIES' POSITIONS

### A. Michael Stone's Motion

Mr. Stone concedes that in sentencing him to twelve months and one day, the Court imposed a within-Guideline sentence; however, Mr. Stone contends that the Court's calculation of the Guideline sentence range was erroneous because he says he should not have been held responsible for twenty-eight marijuana plants in addition to the three he admitted he possessed. *Def.'s Mot.* at 2-3, 7. Mr. Stone acknowledges only his responsibility for the three marijuana plants in his basement, and maintains that the evidence does not allow the finding that he knew and participated in the cultivation of the additional twenty-eight plants on his property and the adjoining property of his brother. *Id.* Mr. Stone says that his "applicable Guideline Range could be as low as a level 6," which "would result in a sentencing range of 0-6 months." *Def.'s Mot.* at 11-12. This calculation is presumably based on his acknowledged responsibility for the 3 plants in his basement, which would equal 300 grams under U.S.S.G. § 2D1.1(c)(E), a resulting base offense level of 8 under U.S.S.G. § 2D1.1(c)(17), and a 2-level decrease for acceptance under U.S.S.G. § 3E1.1(a), for a total offense level of 6. With a Criminal History Category I and a total offense level of 6, the guideline sentence range would be 0 to 6 months.

Mr. Stone's attack on the Court's findings is uncharacteristically scattered. However, as the Court understands it, Mr. Stone makes the following points: (1) that the "parties are bound by facts and stipulations they enter into at the time of a guilty plea"; (2) that, at sentencing, the Government "conceded that ten plants used in calculating Michael Stone's offense level should not have been included"; (3) that the Government "has a duty to refrain from presenting what it believes to be perjured testimony in obtaining a conviction"; (4) that, to establish the Stone brothers's "jointly undertaken activity," the Government was required to present evidence of either Michael Stone's "agreement to participate" in the activity or that he aided and abetted the activity by "assist[ing] in the manufacture of the additional 28 plants"; and (5) that the Government failed to present "sufficient reliable evidence to establish that Michael Stone both knew of and participated in the cultivation of the additional twenty-eight plants attributed to him" at the sentencing hearing. *Id.* at 7-11.

### B. The Government's Response

The Government defends the Court's drug quantity calculations. *Gov't's Opp'n* at 1-5. After reviewing the evidence at the sentencing hearing, the Government concludes that "the Court made the fact-bound determination that the Government had proven by a preponderance of the evidence that the marijuana grow was a joint operation . . . and that both brothers were responsible for all the plants." *Id.* at 5.

## III.   DISCUSSION

### A.   Legal Standard

The legal standard for evaluating a motion for bail pending appeal appears in

18 U.S.C. § 3143(b):

> (1) . . . (T)he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless the judicial officer finds—
>
> . . .
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title . . . .[2]

The Defendant has the burden of satisfying these statutory elements. *See*

*Morison v. United States,* 486 U.S. 1306, 1306-07 (1988).   The First Circuit has

made clear that the Bail Reform Act of 1984 creates "no presumption in favor of

release pending appeal; on the contrary, even when the conviction does not involve a

---

[2] This section also requires the court find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."  18 U.S.C. § 3143(b)(1)(A).  The Government does not contend that Mr. Stone is likely to flee or that he poses a danger to the safety of others, *Gov't's Opp'n* at 3, and this Court therefore addresses only whether the appeal poses a substantial question of law or fact under § 3143(b)(1)(B).

crime of violence or drug offense, detention (following conviction and sentencing) is mandatory unless the judicial officer finds *inter alia* 'that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in' a reversal, new trial, or reduced term of imprisonment that would expire during the expected duration of the appeal process."[3] *United States v. Colon-Munoz*, 292 F.3d 18, 20 (1st Cir. 2002) (quoting 18 U.S.C. § 3143(b)(1)).

The First Circuit has adopted the view that "substantial question of law or fact" refers to "a 'close' question or one that very well could be decided the other way." *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985) (quoting *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir. 1985)). The *Bayko* Court pointed out that a literal reading of § 3143(b)(1)(B) would present a classic "Catch-22" because if the trial court had concluded it was likely making the wrong decision, it would have made the right one. 774 F.2d at 522-23. Thus, the First Circuit concluded that the "likely to result in a reversal or order for new trial" factor is actually "a requirement that the claimed error not be harmless or unprejudicial." *Id*. at 523. The same standard applies to claimed errors that would result in no imprisonment or a reduced term of imprisonment less than the expected duration of the appeal process. *See* 18 U.S.C. § 3143(b)(1)(B)(iii), (iv).

---

[3] Although convicted of drug and firearm possession offenses, Mr. Stone is not subject to the more stringent provisions of 18 U.S.C. § 3143(b)(2) because his drug offense does not carry a maximum term of imprisonment of ten years or more, 18 U.S.C. § 3142(f)(1)(C), and because his firearms offense does not fit within the offenses listed in 18 U.S.C. §3142(f)(1)(A)-(C).

## B.    Drug Quantity

The Stone brothers live within fifty to sixty yards of each other in a rural Maine town on a parcel of land that once belonged to their parents.  In 1988, their parents divided the parcel by deed between their two sons, transferring the southern half to Bradley and the northern half to Michael.  The brothers share a common driveway, which splits into a Y, the left side of the Y going to Bradley's home and the right side to Michael's.  There are no physical demarcations between Bradley's and Michael's land: no fences, no walls, and no obvious landmarks.  The Stone brothers share the same address: 1557 Lyford Road.

The affidavit of Special Agent Jonathan L. Richards—admitted at the sentencing hearing as Government's Exhibit 1 without objection (*Tr.* at 73:22-74:6)—contained the following facts: on September 4, 2010, a concerned citizen informed the police that the Stone Brothers had marijuana growing behind their respective homes in Orneville, Maine.  *Gov't's Ex.* 1 at 6.  The concerned citizen reported that he had learned that Michael Stone had been bragging to mutual friends that he and Bradley were growing marijuana behind their homes, that they had been doing so for the past three years, and that they did not think anyone would dare sneak around their homes.  *Id.* at 6-7.  The concerned citizen took photographs of the marijuana plants on the Stone brothers's land and gave them to the police.  *Id.* at 7-8.

On September 9, 2010, MDEA agents observed the Stone brothers's property from the woods behind their parcels and located an old abandoned Ford Explorer

with 4 to 6 marijuana plants in the front seat area.[4]  *Id.* at 8-9.  As the agents

traveled around the area, they came upon another 7 marijuana plants.  *Id.* at 9.  As

they neared Bradley Stone's house, they located another patch of marijuana

surrounded by chicken wire.  *Id.* at 9-10.  As they went toward Michael Stone's

house, they found another 6 marijuana plants directly behind his residence.  There

was a well-worn path around these plants.  *Id.* at 10.

Agent Richards researched law enforcement records and discovered that the

Piscataquis County Sheriff's Department had performed a judicially-authorized

search of the Stone properties in 2007 and discovered 25 pounds of processed

marijuana in Bradley's residence and eight live marijuana plants and a bag

containing marijuana seeds in Michael's residence.  *Id.* at 10-11.

MDEA Agent Christopher Gardner testified at the sentencing hearing.  *Tr.* at

28:8-19.  He participated in a September 21, 2010 judicially-authorized search of the

Stone brothers's properties.  *Tr.* at 29:23-30:4.  Starting near Michael Stone's

residence, Agent Gardner found three "plots" (or separate areas of cultivation with a

cut stalk, representing the remains of a plant) in the area called the "ice shack," an

RV-type structure.  *Tr.* at 36:24-37:21.  These three plots were in the same area

where the officers had observed six growing plants on September 9, 2010.  *Tr.* at

37:23-38:6.  Agent Gardner located two marijuana plants in an area of property

closer to Michael's residence than Bradley's residence.  *Tr.* at 40:15-20.  He found

"probably more than five" plants growing in a "very swampy area."  *Tr.* at 40:21-

---

[4] At sentencing, the Government excluded the marijuana plants in the Ford Explorer from calculation.  *Tr.* at 16:17-17:7.

41:1. Continuing toward Bradley's property, he discovered "a large pile of Pro-Mix or potting soil, several yards of it" at the edge of a gravel pit nearer Bradley's home. *Tr.* at 41:2-10. Finally, he found two more marijuana plants in a 10 x 10 garden that was located at the end the Stone brothers's common driveway. *Tr.* at 41:19-42:15. Combining the September 9 and September 21, 2010 searches, and based on Agent Gardner's testimony, agents found a total of 31 marijuana plants on the Stone brothers's properties: 2 + 6 + 2 + 5 + 2 = 17 throughout the properties plus 11 growing in Bradley's swamp and 3 drying in Michael's basement.

Michael Stone acknowledged that the three marijuana plants in his basement were his responsibility and Bradley Stone acknowledged that the eleven marijuana plants in the swamp area were his responsibility. *Tr.* at 106:22 (Attorney Villa: "He's solid on three"); *Tr.* at 113:13-15 (Attorney Haddow: "Bradley Stone maintains that the plants that were growing in the swampy area behind his home were his plants and that there were 11 of them"). The question at the sentencing hearing narrowed to the responsibility for the 17 remaining plants and whether, in Michael Stone's case, he was also responsible for Bradley's 11 plants.

On this point, the Court considered whether the Government had proven it was more likely than not that the Stone brothers were engaged in a joint enterprise. The Court found that they were based on the following evidence: (1) Michael Stone and Bradley Stone had a history of marijuana cultivation; (2) Michael Stone had bragged to others about growing marijuana in their backyard; (3) Michael Stone said that they had been doing so for about three years; (4) Michael Stone thought

law enforcement could not catch them because the police could not get near enough to their property; (5) when the police investigated the grow operation, they found on the Stone brothers's property exactly the same type of grow operation that Michael Stone bragged about; (6) the Stone brothers each pleaded guilty in this case to manufacturing marijuana, so neither Defendant was a stranger to the growth of marijuana; (7) Michael Stone admitted responsibility for the three marijuana plants in his basement, which he claimed he obtained from "across the street"; (8) the Stone brothers bear numerous similarities: they are only two years apart, they both were graduated from high school, they were both married and divorced, they were both living within earshot of each other, they both do logging and woods work, they both smoke marijuana, and they were both unemployed at the time of the execution of the search warrants; (9) the land the brothers inherited from their parents, although divided by legal description, was otherwise un-demarcated; (10) the drug they were smoking was the same drug they were growing; (11) marijuana plants are distinctive and easily recognizable and should have been obvious to both brothers; (12) the marijuana was scattered throughout the entire property with both brother's side of the line containing an approximately equal number of plants; (13) that the potting soil located near the ice shack near Michael's home is similar to the potting soil found in a large quantity near Bradley's home and the chicken wire found around the marijuana plants on both sides of the property line was similar; (14) in Michael Stone's basement, the police found not only marijuana plants but also seeds, indicative of a grow operation; (15) Bradley Stone's position at sentencing

was that (other than eleven plants), he was not responsible for the rest of the marijuana on his own portion of the land or on Michael's portion of the land (*Tr.* 27:19-24: "I know that Bradley Stone can't or won't say those plants are Michael's . . . I think he's saying that the plants not growing on his land were not his"); and (16) there was no evidence that a third person, not a Stone brother, was growing marijuana on the brothers's land. Based on this combination of factors, the Court concluded that the Stone brothers were running a joint marijuana operation and that, in addition to the three marijuana plants in his basement, Michael Stone was legally responsible for the 28 other marijuana plants located on the properties.

## C. The Defendant's Specific Points

Michael Stone's main point seems to be that the Court could not permissibly arrive at its finding that Michael Stone, an admitted marijuana user and grower, would be responsible for the marijuana plants growing on his own property and on the undifferentiated property of his brother. Even if Michael Stone never argued that he "didn't know that marijuana was growing in and around his land and his brother's land," *Tr.* at 134:23-135:1, the Court rejected his argument that in these circumstances the Government must produce evidence that Michael Stone actually seeded, planted, hoed, fertilized, and harvested the plants or otherwise assisted in growing the plants in order to find him responsible under the Guidelines.

In making this finding, the Court took into account that at a sentencing hearing, the Government is required to prove drug quantity "by a preponderance of the evidence and is not required to make an exact determination but rather only a

reasoned estimate." *United States v. Rodriguez*, 525 F.3d 85, 107 (1st Cir. 2008).
Here, although the Government did claim a conspiracy, the Government charged
that each Stone brother manufactured marijuana or aided and abetted the
manufacture of marijuana and each Stone brother pleaded guilty to that charge.
*Indictment* (Docket # 10). At sentencing, the Government sought to prove—and did
prove to the Court's satisfaction—that the manufacturing was "a jointly undertaken
criminal activity" and that each Defendant was responsible for "all reasonably
foreseeable acts and omissions by others in furtherance of the jointly undertaken
criminal activity that occurred during the commission of the offense of conviction."
U.S.S.G. § 1B1.3(a)(1). The evidence that the Stone brothers were growing
marijuana themselves, and aiding and abetting each other in doing so, was simply
overwhelming.

Even after carefully reviewing the transcript of the sentencing hearing in this
case, the Court does not know what to make of Mr. Stone's claim that the
Government presented perjured testimony, violated its own stipulations, or
conceded that ten plants that the Court counted against Michael Stone should not
have been counted.[5] These arguments have simply not been sufficiently developed

---

[5] Defense counsel goes so far as to say that without Michael Stone's admission that he grew
marijuana "across the street," the Court should not have accepted Michael Stone's guilty plea to a
felony since the possession of only three marijuana plants would be a misdemeanor. *Def.'s Mot.* at 9
n.1 (citing 18 U.S.C. § 844). The short answer is that if at the sentencing hearing the Government
had not proven a sufficient marijuana quantity to establish a felony, the Court would have allowed
Michael Stone to withdraw his guilty plea. But the Court views this argument as odd, because
defense counsel repeatedly represented to the Court at the Rule 11 hearing on August 3, 2011 that
she believed her client was guilty of the crime to which he was pleading guilty, namely the felony
charge. More typically, if defense counsel believes her client is not guilty of the crime, a conditional
plea is entered into. Here, Michael Stone pleaded guilty to the felony after both he and his attorney
represented to the Court that he was pleading guilty to the felony because he was actually guilty of

for the Court to consider.[6]

## IV. CONCLUSION

Michael Stone has not raised a substantial question of law or fact under 18 U.S.C. § 3143(b) to justify his post-conviction release, and the Court DENIES Michael Stone's Motion for Bail Pending Appeal (Docket # 111).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 4th day of May, 2012

---

that crime.

[6] Though she does not say it, defense counsel may be basing her perjury claims on differences between the observations of her private investigator and the observations of the police officers. *Tr.* 105:18-106:12. But the Court resolved these conflicts without concluding that anyone was lying. Indeed, defense counsel's investigator admitted that he did not go looking for all of the areas indicated as grow areas by the law enforcement search, but only tried to find the easily recognizable ones based on visual cues in the photographs taken. *Tr.* at 95:24-96:24 (Q: "Did you look for any of those other 30 plots?" A: "I did not.").